352 P.2d 641

**Billie Plain McCORD, Plaintiff-Appellant,**

v.

**H. R. ASHBAUGH and Elizabeth Ashbaugh, Defendants-Appellees.**

No. 6677.

Supreme Court of New Mexico.

May 24, 1960.

LaFel E. Oman, Las Cruces, for appellant.

J. Benson Newell, Las Cruces, for appellees.

COMPTON, Justice.

This is a suit for a declaratory judgment wherein appellant sought to have the court determine the rights and interests of the parties in a 120-acre tract of land in Sierra County and to declare that appellees have no lien upon the land.

A brief history of the transactions involving the title will be beneficial. On October 22, 1955, one A. D. Turner and his wife gave a mortgage to appellant on the 120-acre tract of land in question as security for a $28,000 indebtedness. Thereafter, a suit to foreclose this mortgage was subsequently instituted by him but a settlement was reached and the case was not prosecuted to judgment.

On June 13, 1956, A. D. Turner and wife conveyed title to this tract by warranty deed to Myrtis Plain, mother of the appellant. Then on July 6, 1956, while title to

the tract was in Myrtis Plain, appellees, H. R. and Elizabeth Ashbaugh, recovered a judgment in the amount of $5,725 against the Turners. A transcript of the judgment docket was filed for record on August 18, 1956.

Myrtis Plain conveyed the 120-acre tract to appellant by quitclaim deed on November 19, 1956.

Apparently an essential part of the value of this tract was a Forest Service grazing permit which was still in the name of the Turners even though they had previously conveyed the tract to Myrtis Plain. Consequently, on November 19, 1956, the Turners quitclaimed any interest in the tract to the appellant "together with all Forest Allotment permits and rights, and all improvements thereon."

Appellant, through her attorney, then made application to the Forest Service for transfer of the grazing permit, referring in her application to the recorded quitclaim deed from the Turners. Appellant's attorney was then advised by the Forest Service by letter that a quitclaim deed was not satisfactory, that a warranty deed was necessary. The letter from the Forest Service also stated that upon receipt of a copy of the recorded warranty deed the grazing permit would be transferred to the plaintiff. On January 12, 1957, the Turners executed a warranty deed to the 120-acre tract to appellant, "together with all Forest Allotment permits and rights and all improvements thereon."

This deed was forwarded to officials of the Forest Service who then advised the appellant's attorney that the words in the deed purporting to transfer the grazing permit had to be deleted since "a grazing permit on a National Forest is only a privilege and not a property right."

Subsequently, on March 1, 1957, appellant conveyed the property in question back to the Turners by warranty deed, including "all Forest Permits incident thereto." On March 12, 1957, the Turners reconveyed the property to appellant by warranty deed omitting any reference to grazing permits. Each of these deeds recited "no cash consideration."

When appellant subsequently found a buyer for the property in question, the prospective buyer's attorney required that a release be secured from the Ashbaughs due to the possibility that a judgment lien had attached to the property. The Ashbaughs refused to execute a release and appellant subsequently brought this suit for a declaratory judgment as previously stated.

In the suit for a declaratory judgment the only witness for appellant was Mr. Nelson, the attorney who had represented her in the various negotiations and transfers. Witness Nelson testified that the warranty deed from appellant to the Turners, executed on March 1, 1957, was for the sole purpose of satisfying the Forest Service

by them having the Turners reconvey the property to appellant omitting the objectionable phrase "including all Forest Permits incident thereto."

Appellant's theory of the case is that by the conveyance on March 1, 1957, the Turners acquired only a bare legal title, the beneficial interest remaining in appellant. Appellees, on the other hand, take the position that when the property was conveyed to the Turners on March 1, 1957, their judgment lien thereupon attached immediately under § 21-9-6, 1953 Comp.

In the presentation of her case, appellant introduced certain correspondence between her original attorney, Mr. Nelson, and the Forest Service to establish that the sole motive in conveying the property to the Turners and then having them reconvey to her was to meet Forest Service requirements relative to the transfer of grazing permits.

■ Upon objection of appellees, the trial court ruled that this correspondence was inadmissible under the hearsay rule. It further ruled that the oral testimony of witness Nelson concerning the transactions was hearsay evidence. With this evidence excluded, the court understandably ruled that appellees' judgment lien had attached to the property and that it constituted a first priority lien. Appellant strongly urges, and we agree, that the exclusion of this evidence was reversible error.

■ The prohibition of the hearsay rule does not apply to all out-of-court utterances or writings as such. Such extrajudicial statements or writings are subject to the exclusionary impact of the hearsay rule only when they are offered to prove the truth of the matter asserted therein. 6 Wigmore, Evidence § 1766 (3rd Ed. 1940); 2 Jones on Evidence § 271; McCormick on Evidence § 225. Obviously, proof of utterances or writings may be made for a number of purposes other than to prove the truth of the matter asserted. McCormick on Evidence § 228.

In this case, the correspondence exchanged between attorney Nelson and the Forest Service officials was not offered to prove the truth of anything contained therein. This correspondence was offered to establish the motivating factor in conveying the property in question to the Turners, and it was certainly relevant evidence to establish that there was no intention that the Turners receive any beneficial interest in the property.

■ When an extrajudicial statement or writing aids in proving knowledge, belief, good faith, reasonableness or motive, it is admitted as circumstantial evidence thereof. Crespin v. Albuquerque Gas & Electric Co., 39 N.M. 473, 50 P.2d 259; McCormick on Evidence § 228; Ladd, The Hearsay We Admit, 5 Okl.L.Rev. 271, 276; Trainor v. Buchanan Coal Company, 154

Minn. 204, 191 N.W. 431; Smith v. Whittier, 95 Cal. 279, 30 P. 529.

We have carefully examined the testimony of witness Nelson, appellant's original attorney, and conclude that this testimony does not constitute hearsay evidence. Witness Nelson testified that he personally handled "these various transactions on behalf of Mrs. McCord (appellant) with the Turners." The record clearly discloses that attorney Nelson represented appellant in the foreclosure suit, in the execution of the various transfers, and in the correspondence with the Forest Service. His testimony related to things that he personally had done and his reasons for doing so. He testified under oath and was cross-examined at length. We conclude that Nelson's testimony was consonant with the first-hand knowledge requirement and was not violative of the hearsay rule. McCormick on Evidence § 226.

We are of the opinion that the excluded evidence, along with evidence appearing in the abstract of title to the property, was sufficient to establish what might be loosely termed a resulting trust in the property in appellant's favor.

A resulting trust arises when the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition or from accompanying facts and circumstances that the beneficial interest is not to go, or be enjoyed, with the legal title. McDermott v. Sher, 59 N.M. 142, 280 P.2d 660; Browne v. Sieg, 55 N.M. 447, 234 P.2d 1045; Boyd v. Winte, 65 Okl. 141, 164 P. 781; Johnson v. Johnson, 201 Okl. 268, 205 P.2d 314; Moses v. Moses, 140 N.J.Eq. 575, 53 A.2d 805, 173 A.L.R. 273; Cummings v. Cummings, 55 Cal.App. 433, 203 P. 452.

The conveyance from appellant to the Turners on March 1, 1957, was made under circumstances which indicate the absence of any intention to transfer the beneficial interest in the property to the Turners. 4 Scott on Trusts, 2nd Ed., § 404.1; McDermott v. Sher, supra. Certainly, a reasonable inference can be drawn from the correspondence between attorney Nelson and the Forest Service that the conveyance was made to satisfy a procedural requirement of the latter. Witness Nelson's testimony was to this effect.

The deed from appellant to the Turners recites "No cash consideration" and no other form of consideration was shown to have been made. In some states, the presumption of a gift which arises upon a conveyance without consideration may be rebutted by evidence showing a contrary intent, and if so rebutted, this alone is deemed sufficient to establish a resulting trust. Collins v. Collins, 46 Ariz. 485, 52 P.2d 1169; Olivero v. Eleganti, 61 Utah 475, 214 P. 313. See Shannon v. Shannon, Tex.Civ.App., 231 S.W.2d 986. However,

we need not and do not say that this court would so hold. But the apparent absence of consideration for a conveyance of real property is one probative fact in establishing a resulting trust, particularly in cases such as this one where no relationship by blood or marriage is shown to exist between transferor and transferee.

Finally, we conclude that during whatever brief period title may have stood in the name of the Turners by virtue of the conveyance dated March 1, 1957, they only had bare legal title to the property in question as trustees for the appellant. Such being the case, the Turners, as judgment debtors of the appellees, had no interest in the property to which the judgment lien could attach. Davis v. Perry, 120 Cal.App. 670, 8 P.2d 514; First National Bank of Arcadia v. Savarese, 101 Fla. 480, 134 So. 501; Miller v. Kemp, 157 Va. 178, 160 S. E. 203, 84 A.L.R. 980; First National Bank of Catonsville v. Carter, 132 Md. 218, 103 A. 463; Farmers' State Bank of Ada v. Keen, 66 Okl. 62, 167 P. 207.

The judgment is reversed and the cause remanded to the lower court with direction to enter an order decreeing that the appellees have no judgment lien on the subject land.

It is so ordered.

McGHEE, C. J., and CARMODY, MOISE, and CHAVEZ, JJ., concur.