MORTON v. WILLIAMS et al.

No. 30115.   March 24, 1942.

*123 P. 2d 960.*

H. R. Helmbrecht, of Ponca City, and Looney, Watts & Fenton, of Oklahoma City, for plaintiff in error.

Rainey, Flynn, Green & Anderson, of Oklahoma City, for defendants in error.

CORN, V. C. J. This action involves a controversy that has arisen among four sisters over the title to 160 acres of land located south of Harrah, in Oklahoma county, Okla.

The parties will be referred to here as they appeared in the trial court.

The plaintiffs alleged in the amended petition that Ray Warden was the brother of all the parties to the action; that during his lifetime he borrowed $1,000 from his sister, Ella, and gave her a deed to the farm; that this deed was a mortgage; that the mortgage was unpaid, that Ray Warden, prior to his death, induced the plaintiff Ella Warden to give him a deed back to the farm with the understanding that the deed was not to be placed of record until the $1,000 was repaid; that the deed was without consideration; that Ray Warden placed the deed of record and conveyed the farm to Jessie Warden Morton, defendant, in violation of the agreement; that Ray Warden was unmarried and when he died he left as his surviving heirs all of the parties to this action. The action was to establish the mortgage of Ella Warden for $1,000 with interest from the 23rd day of December, 1933, and the prayer of the petition was to the effect that the warranty deed made by Ella Warden to S. R. Warden be reformed and limited so as to be constituted with and subordinate to said mortgage lien, and that the deed made by Ella Warden to S. R. Warden prior to his death be canceled and set aside, and that all of the parties, including the defendant, be declared and decreed the sole and only heirs of S. R. Warden, and that the owners each be declared to hold an undivided one-fourth interest in and to the farm, subject to the mortgage lien in favor of Ella Warden.

The second cause of action was for an accounting for the rents and proceeds collected by the defendant for oil and gas rentals received and for other monies produced from the farm. The defendant, after the action was brought and upon the order of the court, made an accounting and recovered all of the monies so collected, and the court held that she was entitled to the same on account of the services rendered to Ray Warden during his last illness, and no appeal was taken by either party from that order.

The evidence by the plaintiffs is uncontradicted. Ella Warden testified in regard to the relationship of all the parties; that the farm was located in Oklahoma county, and the description was agreed upon by the parties. Evidence as to the agreement between S. R. Warden, the brother, and Ella Warden in regard to the repayment of the $1,000 was offered and rejected by the court. She testified that she first learned that her sister, Jessie Warden Morton, had a deed from Ray Warden a few days after Ray Warden's death. The evidence shows that these four sisters, a few days after their brother's death, met at Cooperton, Okla., where the question of the disposition of Ray Warden's property was discussed. At that meeting they discussed the differences in the settlement of the estate, and Jessie agreed to sign a mortgage to cover the $1,000 that Ella had loaned her brother Ray. A letter written by defendant after the meeting at Cooperton is, in part, as follows:

"In closing the trade he borrowed $1,000 from Ella, some from Louise and some from Frank Darrow. Ella's $1,000 went into this farm and she knew where it was going. . . .

"At the beginning Ray expected to collect enough money to pay you (Ella) & Darrow and Louise off. . . .

"He asked Tom to save this farm for all of us if he possibly could, not for any one person to be the owner, but all four life tenants, the title invested in me and eventually in charity. The deeds did not in any way morally change the ownership. We are all life tenants and he trusted Tom & me to fulfill his wishes.

"Now, back to Ella's $1,000. . . .

"Ella firmly believes that the blackjack farm was in her name until a short time before Ray died. . . .

"Ella, you act like you think we owe you this $1,000 personally and that we are trying to beat you out of it. We are not. When there is any money to divide, you are to get your $1,000 first. . . ."

Ella Warden then continued with her testimony as to the revenue collected from the farm; that Jessie advised her as to the amount collected on the oil and gas lease; that she had asked her sister to account for these monies, but no accounting had been given; that she (Ella) personally had paid the taxes, amounting to $275.90, on the farm.

The other sisters, Mrs. John Clark Williams and Mrs. F. L. Patterson, corroborated the testimony of Ella in regard to the conversation at Cooperton.

The defendant, notwithstanding the fact that she was in Oklahoma City on the date of the trial, did not appear at the trial.

Upon the evidence the court made findings of fact and conclusions of law which are substantially as follows: That all of the parties to this action were sisters of Ray Warden, who died June 18, 1937; that Ella Warden in 1931 loaned to Sidney Ray Warden the sum of $1,000, and to secure the debt Warden gave to Ella a warranty deed, dated December 23, 1933, covering the land described as the Blackjack farm; that the deed was duly recorded and was intended and was in fact a mortgage to secure the $1,000; that Ella Warden, one of the plaintiffs, conveyed the land to S. R. Warden; that the said deed was given upon the express understanding and agreement that same would not be placed of record until the sum of $1,000 was repaid to Ella Warden; that the said S. R. Warden, in violation of said agreement, did place said deed of record on November 2, 1934; that said deed was dated January 19, 1934; that Ray Warden conveyed to Jessie Warden Morton by deed, dated April 1, 1937, the Blackjack farm; that at the time Jessie Warden Morton received the deed she was advised and knew of the agreement between Sidney Ray Warden and Ella Warden; that said deed given by Sidney Ray Warden to Jessie Warden Morton was without consideration; that the sum of $1,000 has never been paid to Ella Warden; and that Sidney Ray Warden conveyed said land to Jessie Warden Morton to be held by her in equal shares and parts for herself and her sisters, Mrs. John Clark Williams, Louise Patterson, and Ella Warden, who thereafter departed this life, so that each of them should be the owner of an undivided one-fourth of the right, title, and interest therein, subject, however, to the lien thereon for the payment of said $1,000 with interest to Ella Warden.

Judgment was rendered carrying out the findings of fact and conclusions of law above related.

The matter is submitted here on the basis of three propositions. However, we deem it necessary to consider only the contention that the evidence is not sufficient to establish either an express, constructive, implied, or resulting trust.

In McGill et al. v. McGill, 189 Okla. 3, 113 P. 2d 826, we held, in paragraph 6 of the syllabus, as follows:

"A 'resulting trust' is one which arises where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts, that the beneficial interest is not to go with the legal title, or to be enjoyed by the holder thereof."

The plaintiffs state: "We now concede that the letter as a trust instrument is probably not sufficient to place a duty upon Jessie to pay the thousand dollars loaned by Ella."

We agree with plaintiffs that the evidence is sufficient to establish a trust in Jessie for the use and benefit of herself and her three sisters, but is insufficient to establish a lien on said land in favor of Ella for $1,000, in view of plaintiffs' waiver of that purported lien.

The judgment is reversed as to the $1,000 lien in favor of Ella, with direc-

tions to the trial court to enter judgment accordingly. The balance of the judgment is affirmed.

RILEY, OSBORN, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., and BAYLESS, J., dissent.